No. 2--04--0297

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 84--CF--188 |
| HECTOR SANCHEZ, | ) ) | Honorable |
| | ) | Christopher C. Starck, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial in 1986, defendant, Hector Sanchez, was convicted of murder, attempted murder, aggravated kidnaping, rape, and deviate sexual assault. Defendant was sentenced to death for the murder conviction, but in January 2003, defendant's death sentence was commuted. On October 27, 2003, defendant filed a pro se motion for deoxyribonucleic acid (DNA) testing under section 116--3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116--3 (West 2002)). In an ex parte hearing in which the State claimed that the evidence to be tested no longer existed, the trial court denied defendant's motion for DNA testing. Defendant appeals, arguing that it was error to deny his motion at a hearing where he was not present or provided an opportunity to

contest the State's representations. We reverse the denial and remand the cause for consideration of defendant's motion for DNA testing under section 116--3.

## I. BACKGROUND

A full recitation of the facts of this case appears in the supreme court's 1986 decision affirming defendant's convictions and sentences on direct appeal (see People v. Sanchez, 115 Ill. 2d 238 (1986)), but we briefly summarize them here. Defendant's conviction stemmed from the abduction and slaying of Michelle Thompson and the attempted murder of Rene Valentine in February 1984. Valentine, an acquaintance of Thompson, testified that on the evening of February 3, he and Thompson left a nightclub and got into Valentine's car in the parking lot. Defendant and another man, later identified as Warren Peters, Jr., entered Valentine's car from opposite sides. Defendant escorted Valentine at gunpoint to a more secluded area of the parking lot and shot him twice in the chest but did not kill him.

Further evidence against defendant was provided by codefendant Peters, who testified on behalf of the State. According to Peters, defendant instructed him to take Thompson to his car while defendant went off with Valentine. After Peters heard what sounded like a gunshot, defendant returned to Peters' car, produced a pair of handcuffs from his coat, and put them on Thompson. They then proceeded to defendant's home and defendant took Thompson inside. By the time Peters entered the house, Thompson was nude from the waist down. Defendant then raped Thompson on the floor, produced a nylon strap, tied Thompson's still-handcuffed wrists to her feet, and dragged her behind a chair.

Thompson tried to escape, and defendant's neighbor, Gene Gonyo, testified that he heard pounding on his back door around 1:30 a.m. on February 4. Gonyo saw a man and

woman outside his house, and the woman was naked below the waist. Shortly after that, Gonyo saw the man and woman walk toward defendant's house. Defendant soon appeared alone at Gonyo's door and apologized for any disturbance.

Peters testified that defendant then carried Thompson to the basement. Peters went down several minutes later and observed Thompson leaning over the washing machine with defendant behind her. Thompson had been gagged with a strip of cloth. Defendant then announced that he would "have to kill her" and strangled her with a nylon strap.

When defendant and Peters began to move the body, Peters noticed that Thompson had defecated on the basement floor. After defendant cleaned up the excrement, they dragged the body upstairs and placed it in the backseat of defendant's car. Defendant and Peters then drove to an isolated location in Wisconsin and disposed of the body. As defendant drove away, he ran over the body.

The doctor who performed the autopsy testified that the cause of death was strangulation with a fairly wide ligature. Other bruises and abrasions that were found were consistent with the events described by Peters. Although the examination revealed evidence of anal penetration, there was no trace of excrement or injury to the genitalia, as is commonly found in rape victims. Swabs were taken from all of Thompson's body cavities, but only the vaginal area showed the presence of semen. Chemical factors in the semen were consistent with defendant's blood type and the vaginal swabs were admitted into evidence.

A microscopic analysis expert with the Federal Bureau of Investigation (FBI) testified that his investigation involved comparisons of hairs, fibers, and other materials collected from Thompson's body and the scene of the crime. Fibers found on her body were

consistent with fibers from a number of sources in defendant's house and car. In addition, Thompson's hair was consistent with hair found in defendant's house and car as well as Peters' car. Buttons and fibers consistent with Thompson's clothing were also found in defendant's house. Items admitted into evidence included head hair samples from Thompson, hundreds of plastic bottles containing hair and fiber, and eight or nine boxes of numerous microscopic slides containing hair and fiber.

The jury found defendant guilty of murder, attempted murder, aggravated kidnaping, rape, and deviate sexual assault. Defendant was sentenced to death for the murder conviction, and the supreme court affirmed his convictions and sentences on direct appeal. See Sanchez, 115 Ill. 2d 238. Consolidated with the case was the appeal in a separate proceeding defendant had initiated under section 2--1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2--1401). While the supreme court remanded the case for an evidentiary hearing on one of the contentions raised in the section 2--1401 petition, it later affirmed the trial court's denial of the claim. People v. Sanchez, 131 Ill. 2d 417 (1989). After the United States Supreme Court denied defendant's petition for certiorari (Sanchez v. Illinois, 483 U.S. 1010, 97 L. Ed. 2d 745, 107 S. Ct. 3240 (1987)), defendant filed a pro se postconviction petition, which the trial court dismissed without an evidentiary hearing. Our supreme court affirmed the dismissal of defendant's postconviction petition. People v. Sanchez, 169 Ill. 2d 472 (1996).

On October 27, 2003, based on "semen and hair specimens secured during the investigation of the death" of Thompson, defendant filed a motion for DNA testing (725 ILCS 5/116--3 (West 2002)). Defendant's motion stated, among other things, that the sole issue at trial was identity and that the evidence to be tested had been in the "continuous

possession of law enforcement agencies, thereby satisfying the requirement of a sufficient chain of custody."

On October 30, 2003, the court informed the State of defendant's motion and continued the matter to December 12, 2003, for a status hearing to allow the State to respond. On December 12, 2003, the State informed the court that it had contacted the FBI to determine if the semen samples from 1984 still existed. Because the FBI had not provided a definitive answer, the court continued the matter to January 9, 2004.

On January 9, 2004, the State appeared in court for a status hearing regarding whether the samples still existed. The State noted that defendant was not present in court and was not represented by counsel. According to the State, it had been working with Assistant Special Agent Brian Beane, who was in charge of the Rolling Meadows FBI office, which had handled defendant's case. Beane informed the State that, 20 years ago, the samples had been submitted to the FBI's crime lab in Washington for testing. Beane contacted the Washington crime lab, which had moved to Quantico one year earlier, and was informed that the samples were no longer there. Beane also contacted the medical examiner's office where the autopsy was conducted and found that the samples were not there. Beane further told the State that the samples were not at the FBI offices in Rolling Meadows or Chicago. According to the State, "[Beane] says it appears the samples do not exist any longer. General policy of the FBI is not to keep samples anywhere close to the 20 years that was involved in this case." The State also noted that defendant never requested that the samples be preserved.

When the court asked whether the State or the State Police crime lab had ever possessed the samples, the State responded that it did not believe so, because the "results

weren't introduced into evidence." According to the State, it did not retain any evidence on its own because the samples needed to be refrigerated and the State's office did not have the necessary facilities. The State also said that neither the State Police crime lab nor the Northern Illinois Police crime lab possessed the samples, because the testing in defendant's case was done exclusively by the FBI crime lab. The court then denied defendant's motion for DNA testing, stating the following:

"I believe under the statute [defendant] has to allege that the samples still exist so they can be tested under the DNA - the new DNA exclusions or exceptions to the filing of late post-conviction petitions and requests for samples. There appearing that the samples no longer exist after 20 years and quite frankly, the FBI having no reason to keep them at that point because further testing was not available [defendant's] motion for DNA testing of the samples is denied."

The trial court did not address whether identity was at issue at trial, but ruled that defendant was unable to establish a prima facie case relating to the chain of custody. A written order was entered stating that, "[t]his matter coming on for status of the existence of the physical evidence sought to be tested" by defendant, "the court finds that such evidence no longer exists and dismisses and/or denies the defendant's petition pursuant to 725 ILCS 116-- 3(b)(2)." Defendant's timely notice of appeal followed.

## II. ANALYSIS

Defendant asserts that the trial court erred by denying in an ex parte hearing his motion for DNA testing. According to defendant, he was not granted the opportunity to respond to the State's representations that the evidence no longer existed; the State's representations were based on "unsworn hearsay information of an FBI agent"; and no

explanation was given regarding the procedures that are normally taken when the State prosecutes a crime while "using an outside laboratory." For example, defendant states that he was denied the opportunity to allege that the samples were lost or destroyed in bad faith. Defendant concludes that the denial of his motion, without notice and an opportunity to meaningfully contest the factual matters asserted by the State, violates basic concepts of due process.

The State responds that the manner in which the trial court disposed of defendant's motion for DNA testing was proper. According to the State, defendant does not contend that there was an order requiring the evidence to be retained, there is no indication that the evidence was lost or destroyed in bad faith, defendant could have filed an amended or successive motion under section 116--3 in response to the State's representations, and section 116--3 does not specifically provide for any type of hearing.

Section 116--3 permits a defendant to obtain forensic testing of physical evidence when such testing was not available at the time of trial and when certain statutory requirements have been met. People v. Gibson, 357 Ill. App. 3d 480, 484 (2005). "Its purpose is to provide an avenue for convicted defendants who maintained their innocence to test available genetic material capable of providing new and dramatic evidence materially relevant to the question of the defendant's actual innocence." People v. Henderson, 343 Ill. App. 3d 1108, 1114 (2003). Section 116--3 provides:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is

now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction;

and

(2) the evidence to be tested has been subject to a chain of custody sufficient

to establish that it has not been substituted, tampered with, replaced, or altered in any

material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to

protect the State's interests in the integrity of the evidence and the testing process upon a

determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence;

(2) the testing requested employs a scientific method generally accepted within

the relevant scientific community." 725 ILCS 5/116--3 (West 2002).

Thus, in order to present a prima facie case for forensic testing under section 116--3, the defendant must show that identity was the central issue at trial and that the evidence to be tested was subject to a sufficiently secure chain of custody. People v. Johnson, 205 Ill. 2d 381, 393 (2002).

A trial court's decision to deny a motion for DNA testing is subject to de novo review. People v. Shum, 207 Ill. 2d 47, 65 (2003). "Our review is de novo because the trial court's decision regarding such a motion is not based upon its assessment of the credibility of the witnesses but on its review of the pleadings and the trial transcripts." People v. Jones, 334 Ill. App. 3d 61, 63 (2002). As previously indicated, the State argues that the trial court's denial was proper because section 116--3 does not specifically provide for any type of hearing. Although cited by neither party, our research has revealed two cases in which the trial court summarily denied the defendant's motion for forensic testing under section 116--3. In People v. Franks, 323 Ill. App. 3d 660 (2001), the defendant argued that the trial court erred by summarily denying his motion where he had alleged a prima facie case that (1) identity was at issue at trial and (2) the evidence to be tested had been subject to a sufficient chain of custody. Franks, 323 Ill. App. 3d at 661-62. The defendant in Franks also relied on the fact that the State had not yet filed a response at the time the trial court denied his motion. Franks, 323 Ill. App. 3d at 662. The Appellate Court, Fifth District, affirmed the denial because the defendant's motion failed to allege that the technology for the requested testing was unavailable at the time of trial, as required under subsection (a). Franks, 323 Ill. App. 3d at 662. In other words, the court determined that the defendant's motion for DNA testing was wholly insufficient on its face to satisfy the requirements of section 116--3(a). Franks, 323 Ill. App. 3d at 662.

Similarly, in People v. Stevens, 315 Ill. App. 3d 781, 784 (2000), the defendant argued that the trial court erred by summarily denying his motion without a hearing. The trial court in Stevens found section 116--3 inapplicable, based on its finding that identity was not the issue in the defendant's case. Stevens, 315 Ill. App. 3d at 784. The Appellate Court, Fourth District, affirmed the summary denial on three grounds: (1) section 116--3 does not require that the trial court conduct a hearing on a motion for forensic testing; (2) despite the defendant's assertion otherwise, identity was not the issue in the trial that resulted in the defendant's conviction; and (3) the blood he sought to have tested would not produce new, noncumulative evidence materially relevant to the defendant's assertion of innocence. Stevens, 315 Ill. App. 3d at 784.

Franks and Stevens appear to hold that a trial court may summarily deny a motion under section 116--3 as a matter of law, without a hearing of any kind. See Stevens, 315 Ill. App. 3d at 784 (section 116--3 does not state that a defendant is entitled to a hearing and courts will not interpret a statute to guarantee a hearing as a matter of right without such language in the statute). As a result, these cases arguably support the State's assertion that section 116--3 does not entitle defendant to a hearing as a matter of right. However, we need not comment on the propriety of Franks and Stevens, as they are distinguishable. First, the case at bar differs from Franks in that defendant's motion for DNA testing is not facially insufficient. For reasons we discuss below, defendant's motion has sufficiently alleged a prima facie case regarding chain of custody. Second, unlike in Stevens, defendant's motion was not summarily denied, without a hearing, based on the pleadings and the trial transcript. Rather, an ex parte hearing was conducted in which the

State made unsworn representations that the evidence to be tested no longer existed. Thus, while Franks and Stevens considered whether a court may summarily deny a motion for DNA testing under section 116--3, the question here is whether a court may deny a facially-sufficient section 116--3 motion at a hearing where the defendant is not present or provided an opportunity to contest the State's assertions. Defendant's pro se motion requested the court to order DNA testing using the polymerase chain reaction (PCR) procedure on the semen found in Thompson's vaginal area and the hair found on her body and at the crime scene. Specifically, his motion alleged that (1) the sole issue at trial was identity; (2) the State's case was based entirely on circumstantial evidence; (3) defendant has proclaimed his innocence at all times; (4) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to his claim of innocence; (5) if DNA testing on the semen samples and hairs found on Thompson's body excluded defendant as the source, he would be exonerated; (6) the evidence was not subject to DNA testing at trial because PCR technology was not available in Illinois in the mid-1980s; and (7) "since the conclusion of [his] trial, the evidence to be tested has been in [the] continuous possession of law enforcement agencies, thereby satisfying the requirement of a sufficient chain of custody to establish the integrity of the evidence."

As stated, defendant's motion for DNA testing has sufficiently alleged a prima facie case regarding chain of custody. In other words, defendant's motion under section 116--3 is facially sufficient with respect to the chain-of-custody requirement. Our conclusion is supported by the supreme court's decision in Johnson, where the defendant sought DNA testing of a Vitullo rape kit. Johnson, 205 Ill. 2d at 393. In Johnson, the State argued that the defendant failed to present a prima facie case that the kit was subject to a sufficiently

secure chain of custody. Johnson, 205 Ill. 2d at 394. The court rejected the State's argument, reasoning:

"Though the State contends that the defendant has presented no evidence of the kit's location since his 1984 trial, such evidence would not be available to the defendant. The Vitullo kit, as a piece of real evidence admitted at trial, would have remained in the custody of the circuit court clerk after the defendant's conviction." Johnson, 205 Ill. 2d at 394.

The court in People v. Travis, 329 Ill. App. 3d 280 (2002), made a similar observation:

"For future reference, we note the parties engaged in some dispute over chain-of-custody issues before the trial court. The court did predicate dismissal on these grounds; indeed, the court evinced a willingness to allow [the defendant] some limited amount of discovery on the issue, all else being equal. We find this course to be a sound one. It asks too much to require petitioning defendant in these cases to plead and prove proper chain of custody at the outset, for the evidence at issue will undoubtedly have been within the safekeeping of the State, not the defendant. The trial court may allow limited discovery in an appropriate case." Travis, 329 Ill. App. 3d at 285.

In this case, the State did not file a written response challenging defendant's ability to establish a prima facie case regarding chain of custody. Rather, the State advised the court at a status hearing of its investigation into whether the evidence to be tested still existed. According to the State, FBI agent Beane advised that the samples had been submitted to the crime lab in Washington 20 years ago, but were no longer there. The State further advised the court that the FBI's general policy was not to keep samples

anywhere close to 20 years. Based on the State's unsworn factual representations, the trial court determined that defendant was unable to present a prima facie case that the evidence had been subject to a sufficient chain of custody and denied the motion.

However, defendant was not present at the status hearing and had no notice of the State's position that the evidence to be tested no longer existed. Indeed, defendant was given neither notice nor an opportunity to be heard on the issue upon which the trial court based its denial. For example, defendant was not given the opportunity to contest the State's assertion that the State Police crime lab never had the samples. Defendant points out that, while the State relayed to the trial court that the "results weren't introduced into evidence," the record appears to show otherwise. According to the trial transcript, items entered into evidence included vaginal swabs showing the presence of semen, head hair samples from Thompson, hundreds of plastic bottles containing hair and fiber, and eight or nine boxes of numerous microscopic slides containing hair and fiber. If real evidence admitted at trial would have remained in the custody of the circuit court clerk after defendant's conviction (see Johnson, 205 Ill. 2d at 394), defendant should have been given an opportunity to contest the State's assertion that it never had the samples.

Rather than filing a written response to defendant's motion for DNA testing, the State was allowed to argue in an ex parte hearing that the evidence to be tested no longer existed. Because defendant had no notice or opportunity to contest the State's representations, and because the State's representations formed the basis of the trial court's denial, defendant was denied procedural due process. Once defendant sufficiently alleged a prima facie case regarding chain of custody, and once the State appeared in court to challenge defendant's ability to satisfy the chain-of-custody requirement,

fundamental fairness required that defendant be permitted to participate in that hearing. See People v. Alexander, 136 Ill. App. 3d 1047, 1052 (1985) (ex parte hearings were improper because fundamental fairness and orderly procedure demand that both parties be permitted to participate and one-sided hearings may unduly prejudice the petitioner). In People v. Kitchen, 189 Ill. 2d 424 (1999), for example, our supreme court vacated the trial court's denial of the defendant's postconviction petition. The court agreed with the defendant that the trial court's failure to give the defendant notice that it intended to make a substantive ruling on the petition and its failure to hear arguments on the petition denied the defendant procedural due process. Kitchen, 189 Ill. 2d at 434-35; see also People v. Smith, 312 Ill. App. 3d 219, 225 (2000) (the court determined that the defendant was denied her right to due process of law when her pro se postconviction petition was dismissed at a status court date without due notice being given to the defendant's counsel and without defense counsel's presence).

The purpose of the chain-of-custody requirement is to ensure the reliability of the evidence to be tested. People v. Schutz, 344 Ill. App. 3d 87, 94 (2003). If it is determined that the evidence to be tested has been destroyed, however, relief under section 116--3 is no longer available to the defendant. Schutz, 344 Ill. App. 3d at 94. It is preferable that this requirement be addressed by the parties in the trial court. Henderson, 343 Ill. App. 3d at 1116. As the Henderson court stated:

"If the State wishes to object to the section 116--3 request based on insufficient evidence relating to the chain of custody, it should raise that matter in the trial court. Similarly, if the defendant asserts that he is unable to plead and prove the proper chain of custody because the evidence at issue has been in the safekeeping of the

State or the clerk of the circuit court, the trial court may allow limited discovery in the appropriate case." Henderson, 343 Ill. App. 3d at 1116.

As defendant here has alleged a prima facie case regarding chain of custody under section 116--3, we remand the matter to the trial court to address this issue. On remand, the State shall file a written response with supporting documents in support of its position that the evidence no longer exists and raise any other ground for challenging defendant's motion. Proper notice of the State's written response shall be provided to defendant. If warranted, the trial court may allow limited discovery on the chain-of-custody requirement. In addition, we note that, if it is determined that the evidence has been destroyed, this fact alone does not entitle defendant to a hearing as to whether the evidence was destroyed in bad faith. See Schutz, 344 Ill. App. 3d at 96 (the fact that the evidence sought to be tested has been destroyed does not singularly entitle a defendant to hearing as to whether the evidence was destroyed in bad faith).

### III. CONCLUSION

In short, the trial court shall determine whether defendant is able to satisfy the chain-of-custody requirement. If defendant is unable to do so, the trial court shall deny the motion. If defendant succeeds in this respect, the trial court must also determine whether identity was the issue in the trial that resulted in his conviction. 725 ILCS 5/116--3(b) (West 2002). Provided that these two criteria are met, the trial court is also required to determine whether the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to his assertion of actual innocence and whether the requested testing employs a scientific method generally accepted within the relevant scientific

community. 725 ILCS 5/116--3(c) (West 2002). If all of these requirements are satisfied, the court is mandated to order the testing. People v. Dunn, 306 Ill. App. 3d 75, 81 (1999).

We reverse the Lake County circuit court's judgment and remand the cause for proceedings consistent with this opinion.

Reversed and remanded.

HUTCHINSON and BYRNE, JJ., concur.