WINDOM, Presiding Judge,
concurring in part and dissenting in part.
I agree with the majority’s opinion with one exception. I do not agree with the majority’s decision to remand this cause with instructions for the circuit court to conduct further proceedings on Yeomans’s claim that Juror L.J. failed to disclose during voir dire that her sister had been the victim of a crime. I do not believe that the alleged error upon which the majority remands this cause is preserved for this Court’s review. Further, I disagree with the majority’s conclusion that the circuit court’s failure to inform Yeomans’s counsel that it would consider Juror L.J.’s affidavit denied Yeomans “an opportunity to offer evidence, in the form of an affidavit or otherwise_” 195 So.3d at 1051. Therefore, I disagree with the majority’s decision to remand this cause, and I respectfully dissent.
On February 27, 2006, Yeomans filed his petition for postconviction relief challenging his capital-murder convictions and sentences of death. In his petition, Yeomans alleged that he was denied the right to a fair and impartial jury because Juror L.J. failed to respond truthfully to a question during voir dire. Specifically, Yeomans alleged:
“Juror L.J. did not disclose material information on voir dire. Trial counsel asked if any juror or their family had been a victim of a crime. Juror L.J. did not respond. However, this juror’s sister had been a victim of a violent burglary and attempted rape. Juror L.J., therefore, deceived the court ■ about a matter that qualifies as a valid basis for challenging her impartiality.”
(C. 73.)
On June 14, 2006, the State filed an answer to Yeomans’s petition in which it argued Yeomans’s juror-misconduct claim was procedurally barred because it could have been, but was not, raised at trial or on appeal. Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P. On December 29, 2006, the State filed and served on Yeomans’s counsel a motion to dismiss Yeomans’s petition in which the State reasserted its argument that Yeomans’s juror-misconduct claim was procedurally barred. It further asserted that Yeomans’s claim was without merit because Juror L.J. was unaware at Yeomans’s trial that her sister had been the victim of a crime; therefore, “she did not lie during venire questioning.” (C. 238.) To support its assertion, the State attached to its motion to dismiss an affidavit from Juror L.J. In the affidavit, Juror L.J. swore:
“I served as a juror in the case of the State of Alabama vs. James Donald Yeo-mans. I have a sister, [A.M.G.]. During January, 2006, I had a discussion *1053 with my sister. At that time she told me that a number of years ago she was the victim of a burglary and attempted rape in the State of Texas. This was the first time I had ever heard of this incident. At the time of the Yeomans trial, (March, 2001) I had no reason to suspect my sister had been the victim of this or any other crime.
“During the first week of February, 2006, I was interviewed by two gentlemen. They asked me if either I or any member of my family had been the victim of a violent crime. I told them about my sister’s recent revelation.”
(C. 275.)
On May 17, 2007, four and a half months after the State filed its motion to dismiss and Juror L.J.’s affidavit, Yeomans amended his Rule 32 petition. In his amended petition, Yeomans reasserted his allegation relating to Juror L.J. and argued that the claim was not procedurally barred because the claim only recently had been discovered. Yeomans, however, did not allege that Juror L.J. was aware at that time of Yeo-mans’s trial that her sister had been the victim of a crime. In other words, Yeo-mans failed to allege any facts in his amended petition that would rebut Juror L.J.’s affidavit. Yeomans also failed to attach an affidavit or other evidence to his amended Rule 32 petition.
The next day, Yeomans filed an opposition to the State’s motion to dismiss. In his opposition, Yeomans argued, among other things, that the State’s reliance on Juror L.J.’s affidavit was inappropriate. Specifically, Yeomans argued that “[a]t-taching such an affidavit in an attempt to refute the well-pled facts in Mr. Yeomans’ Petition is inappropriate in a motion to dismiss.” (C. 384.) Although Yeomans did not allege in his amended Rule 32 petition that Juror L.J. knew that her sister had been the victim of a crime at the time of Yeomans’s trial, he argued that Juror L.J.’s affidavit merely created “a disputed issue of fact ... [that could] only be resolved by [the circuit court] upon full consideration and testing of the issue at a Rule 32 hearing” (C. 384.) (emphasis added.) Yeomans did not argue that the circuit court was required to give him notice before considering Juror L.J.’s affidavit. Further, he did not assert that he had attempted, but was unable, to obtain a counter-affidavit or counter-evidence. Although Yeomans was well aware of Juror L.J.’s affidavit, it appears that he chose to forgo presenting his own affidavit and, instead, simply declared a hearing was the only method by which the circuit court could consider his claim.
On June 18, 2007, the State filed an answer to Yeomans’s amended Rule 32 petition. In its answer to Yeomans’s amended petition, the State again asserted that Yeomans’s claim relating to Juror L.J. was procedurally barred and without merit. The State again attached Juror L.J.’s affidavit to support its argument that the claim was without merit.
Thereafter, on April 1, 2010, the State filed another motion to dismiss Yeomans’s Rule 32 petition. In its motion, the State again argued that Yeomans’s juror-misconduct claim relating to Juror L.J. was procedurally barred and that the claim was without merit. The State also, for the third time, attached Juror L.J.’s affidavit.
On May 4, 2010, Yeomans filed an opposition to the State’s latest motion to dismiss his petition. In his opposition, Yeomans again argued -that his juror-misconduct claim was not procedurally barred. He again argued that “[attaching such an affidavit in an attempt to refute the well-plead[ed] facts in Mr. Yeo-mans’[s] Petition is inappropriate in a motion to dismiss.” (C. 631.) Yeomans again failed to allege that he was entitled *1054 to notice before the circuit court could consider Juror L.J.’s affidavit. Further, although he had been presented with Juror LJ.’s affidavit three times, Yeomans did not attach an affidavit or any other evidence of his own to support his juror-misconduct claim. Additionally, he failed to allege that he had attempted to obtain counter-evidence and been- unable to do so.’ Instead, Yeomans again chose to simply declare that a hearing was the only method by which the circuit court could consider his claim..
On August 25, 2010, the circuit court issued an order dismissing Yeomans’s Rule 32 petition. In its order, the circuit court, relying on' Juror LJ.’s affidavit, found that Yeomans’s juror-misconduct claim was without merit.
On September 21, 2010, Yeomans filed a motion for reconsideration of the dismissal of his Rule 32 petition. In his motion, Yeomans asserted that the circuit court had improperly concluded that his juror-misconduct claim was without merit based on Juror LJ.’s affidavit. According to Yeomans, the circuit court improperly “went beyond the pleadings, considering new evidence presented by the State_” (C. 854.) Yeomans also argued that the circuit court erroneously relied on Juror L.J.’s affidavit “without allowing Mr. Yeo-mans to obtain discovery of or present evidence” relating to his juror-misconduct claim.
On appeal, Yeomans argues that the circuit court erroneously “relied on a juror affidavit that the State had attached to its Motion to Dismiss, without allowing Yeo-mans any opportunity to challenge the affidavit or conduct discovery of his own on the issue.” '[11] (Yeomans’s brief, at 14); see also id. at 33 (arguing that the circuit court’s consideration of Juror LJ.’s affidavit was “particularly prejudicial given that it did not allow Yeomans to obtain discovery in order to obtain and present’ countervailing evidence”). He further argues that the circuit court should not have considered Juror L.J.’s affidavit without first giving him notice that the • circuit court intended to consider the affidavit. According to Yeomans, the circuit court’s failure to inform him that it would consider documentary evidence denied him the opportunity to present evidence of his own, thus resulting in reversible error.
The majority agrees with Yeomans’s second point. Specifically, the majority holds:
“[T]he circuit court in this case gave no notice to Yeomans that it intended to take evidence by affidavit in lieu of an evidentiary hearing. Thus, Yeomans was not afforded an opportunity to offer evidence, in the form of an affidavit or otherwise, to counter the affidavit the State offered to disprove Yeomans’s claim. Accordingly, this case must be remanded for the circuit court to comply with Rule 32.9(a), Ala. R.Crim. P., and either hold an evidentiary hearing on the juror-misconduct claim or, after giving notice to the parties of its intention to do so, take evidence by one of the alternative means listed in Rule 32.9(a).”
195 So.3d at 1051. I disagree with the majority for two reasons.
First, Yeomans never asserted in the circuit court that he was entitled to notice before the circuit court could consider Juror L.J.’s affidavit. Further, he never argued below that the circuit court erroneously failed to give such notice. Jt is well settled that “the rules of preservation apply in Rule 32 proceedings, even if the death penalty is involved.” Miller v. *1055 State, 99 So.3d 349, 424 n. 10 (Ala.Crim.App.2011). Accordingly, “[a]n issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.” Mitchell v. State, 913 So.2d 501, 504 (Ala.Crim.App.2005) (citations and quotation marks omitted). This Court has repeatedly held that “[ajrguments not specifically raised before the trial court are waived and are not preserved on appeal.” Lang v. State, 766 So.2d 208, 211 (Ala.Crim.App.1999) (emphasis added) (citing Goodson v. State, 540 So.2d 789, 791 (Ala.Crim.App.1988)). Likewise, “[t]he statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987) (citations omitted).
Here, Yeomans raised specific objections to the circuit court’s consideration of Juror L.J.’s affidavit; however, he never asserted that he was entitled to be given, or that the circuit court erroneously failed to give notice, of its intent to consider affidavit evidence. Accordingly, the issue upon which the majority remands this cause is not preserved and, thus, not properly before this Court.
Second, I disagree with the majority’s conclusion that Yeomans was not given an opportunity to present evidence in support of his juror-misconduct claim. Rule 32.7(a), Ala. R.Crim. P., provides that after an inmate files a Rule 32 petition, the prosecutor shall “file with the court and send to the petitioner or counsel for the petitioner, if any, a response, which may be supported by affidavits and a certified record or such • portions thereof as" are appropriate, or material- to the issues raised in the petition.’’ (Emphasis added.) Caselaw establishes that a petitioner- has the right to present evidence to the court to counter any affidavit filed by -the State.[12] See Wilson v. State, 911 So.2d 40, 46 (Ala.Crim.App.2005). Further, -Rule 32.9(a), Ala. R.Crim. P., provides, in relevant part, that “[t]he court in -its discretion may take evidence by affidavits, written interrogatories, or depositions — ” Finally, Rule 32.7(d), Ala. R.Crim. P., allows the circuit court to dismiss a claim if it determines “that no material issue of fact or law exists which would entitle the petitioner to relief....”
Here, the State first sought dismissal of Yeomans’s: juror-jnisconduct claim based on Juror L.J.’s affidavit in December 2006. Between December 2006 and August 25, 2010, when the circuit court dismissed Yeomans’s petition, the State filed Juror LJ.’s affidavit two more times. In the three and one-half years that passed between the State’s, filing of Juror L.J,’s affidavit and the circuit court’s ruling on Yeomans’s petition, Yeomans never invoked his right to file his own evidence relating to his juror-misconduct claim, nor did he move the circuit court to allow him to take any depositions relating to his juror-misconduct claim. Likewise, Yeomans never sought any discovery relating to his juror-misconduct claim to aid him in presenting evidence of his own. Finally, he never asserted that he was unable, to obtain and to present his own evidence. Instead, Yeomans could have filed evidence to support his claim, but simply chose to *1056 argue, in direct conflict with Rules 32.7(a) and 32.9(a), Ala. R.Crim. P., that the circuit court could not consider under any circumstances Juror L.J.’s affidavit. Yeo-mans’s decision not to file evidence to counter the State’s evidence does not, in my opinion, equate to the denial of an opportunity to file such evidence.
Simply put, this is not an instance in which the State failed to serve the petitioner with its motion and affidavit, thus denying Yeomans the opportunity to present evidence of his own. Ex parte MacEwan, 860 So.2d 896, 897 (Ala.2002). Nor is this a case in which the circuit court refused to accept pleadings or evidence to counter the State’s affidavit. Wilson v. State, 911 So.2d at 46. Rather, this is a case in which Yeomans could have filed his own evidence with his amended Rule 32 petition, but chose not to do so. Accordingly, Yeomans was not denied the opportunity to present evidence; instead, he failed to seize the opportunity. Because Yeomans could have, but did not, file evidence in support of his claim, I disagree with the majority’s decision to remand the cause for further proceedings.
For the foregoing reasons, I respectfully dissent from the majority’s decision to remand this cause.

On Return to Remand

JOINER, Judge.
James Donald Yeomans, an inmate on death row at Holman Correctional Facility, appeals the Geneva Circuit Court’s denial of his Rule 32, Ala. R.Crim. P., petition challenging his convictions for capital murder and his sentence of death.
This Court’s opinion issued on March 29, 2013, states the procedural history and facts related to Yeomans’s crime and will not be restated here. Yeomans v. State, 195 So.3d 1018, 1023 (Ala.Crim.App.2013). In Yeomans, this Court affirmed the circuit court’s denial of his Rule 32 petition and the disposition of all the claims Yeo-mans raised, except his juror-misconduct claim relating to Juror L.J. As to that claim, we stated:
‘Yeomans’s petition alleges a claim of juror misconduct; specifically, the petition asserts:
“ ‘Juror L.J. did not disclose material information on voir dire. Trial counsel asked if any juror or their family had been a victim of a crime. Juror L.J. did not respond. However, this juror’s sister had been a victim of a violent burglary and attempted rape. Juror L.J., therefore, deceived the court about a matter that qualifies as a valid basis for challenging her impartiality. This claim could not have been raised on appeal because juror L.J. hid this information from discovery during voir dire. Only when new counsel was appointed, after the appeal had been completed, did Juror L.J.’s inaccurate responses at voir dire come to light.’
“(C. 351.) In denying this claim as being ‘without merit,’ the circuit court cited an affidavit from Juror L. J., in which L.J. stated that her sister had been the victim of a burglary and an attempted rape but that 'L.J. did not learn of those facts until January 2006, almost five years after Yeomans’s trial. The State submitted this affidavit as an attachment to its April 1, 2010, motion to dismiss the amended Rule 32 petition. In his response to the April 1, 2010, motion to dismiss, Yeomans argued that ‘[attaching ... an affidavit in an attempt to refute the well-plead[ed] facts in [the] Petition is inappropriate in a motion to dismiss,’ and he contended that he was entitled to a hearing on the claim.
*1057 “As to this claim, Yeomans has alleged facts that, if true, would entitle him to relief. See generally Ex parte Burgess, 21 So.3d 746 (Ala.2008). Although Rule 32.9(a), Ala. R.Crim. P., permits the circuit court ‘in its discretion ... [to] take evidence by affidavits, written interrogatories, or depositions, in lieu of an evi-dentiary hearing,’ the circuit court in this case gave no notice to Yeomans that it intended to take evidence by affidavit in lieu of an evidentiary hearing. Thus, Yeomans was not afforded an opportunity to offer evidence, in the form of an affidavit or otherwise, to counter the affidavit the State offered to disprove Yeomans’s claim. Accordingly, this case must be remanded for the circuit court to comply with Rule 32.9(a), Ala. R.Crim. P., and either hold an evidentia-ry hearing on the juror-misconduct claim or, after giving notice to the parties of its intention to do so, take evidence by one of the alternative means listed in Rule 32.9(a).”
Yeomans, 195 So.3d at 1051. Additionally, this Court stated “on remand, the circuit court shall afford Yeomans the opportunity to prove hi's claim as provided in Rule 32.9, Ala. R.Crim. P., which may include the opportunity to demonstrate that he is entitled to discovery on that claim.” 195 So.3d at 1051.
On June 26, 2013, the circuit court entered an order denying the juror-misconduct claim. That order stated, in relevant part:
“This cause coming on to be heard is submitted on remand for the court to hold an evidentiary hearing on the jury misconduct claim or take evidence by any of the alternative means listed in Rule 32.9(a), [Ala. R.Crim. P.,j and testimony being taken at an evidentiary [hearing] in which notice was given to the parties of the Court’s intention to take testimony concerning the misconduct claim and on motion for discovery filed by [Yeomans] and the State’s response to the: motion and [Yeomans’s] reply and the Court having considered the same, the court finds as follows:
“The jury trial of [Yeomans] began March 26, 2001, and the jury rendered its verdicts of guiity 'of capital murder on March 29, 2001.
“The Hon. John Knowles represented [Yeomans] at trial and on appeal. John Knowles, as a witness at this evidentiary hearing, testified that he conducted the voir dire of the members of the jury panel and that he asked the jurors if a juror or any member of their family or close relative had ever been a victim of a violent crime. He further testified that he would, or in all likelihood would, challenge for cause or use a peremptory strike as to any juror that answered that question in the affirmative.
“At the evidentiary hearing which was held June 6, 2013, [L.J.], the juror in question, testified that she had a half-sister who was 8 years older than she was. She further testified that in 2001 at the time of the trial and at the time of the voir dire, she did not know and'had no knowledge that her sister had been tlm subject of a violent crime (rape or attempted rape) in Texas in the early eighties.
“She testified that in 2005 she and her husband were having some trouble and she spent a few days with her sister, [A.G.]. At the time, in late 2005 or 2006, she first was told and heard that her sister had been subject to a violent crime.
“[L.J.’s] half-sister [A.G.] testified. She testified that she lived in Texas in' the early eighties and was subject to a violent crime (rape or attempted rape). She testified that she did not tell her *1058 sister about the violent crime until after 2003, the year her mother died. She testified that her sister (the juror) did not know of the crime at the time of trial in March of 2001 and that she told her sister sometime after the trial after her mother died in 2003,
“The Court further finds that the juror stated that her 2006 affidavit where she stated that she did not learn that her sister was subject to a violent crime until January 2006, almost five (5) years after the trial, was true.
. “The Court -notes that both the juror and her sister were subject to a well-' prepared cross-examination and were thoroughly cross-examined.-
“The Court finds that there was no juror misconduct. At the time [L.J.] answered the question on voir dire she had no knowledge — did not know — that her sister had been subject to a violent crime.
“The Court finds that ,,. L.J. and .... [A.G.]- testified at this hearing, [A.G.] testified as to when, where, and in some detail of the crime in Texas in the early eighties. There is no dispute that the sister was the .victim of a violent crime; it occurred in the early eighties in Texas, There is no need to take further deposition of the sister. The court.has considered the allegations and argument on the motion for discovery and the request to reset the evidentiary hearing date, and [the] request for discovery is-denied.”
(Record on return to remand, C, 188-90.)
This Court granted Yeomans’s motion for leave.to file a brief on return to remand. Yeomans presents four issues.
I.
In issues-1 and II of his brief on return to remand, Yeomans challenges the circuit court’s denial of his motion for discovery.
Yeomans filed a motion on April 23, 2013, seeking the following discovery: (1) the opportunity to depose L.J.; (2) the opportunity to depose A.G.; and (3) certain records from the State of Texas, which Yeomans stated would be identified after deposing A.G., regarding the crime against A.G. Yeomans also requested leave, if necessary, to move for additional discovery once he obtained the discovery sought in the April 23, 2013, motion. The State filed a . response on May 24, 2013, opposing Yeomans’s discovery motion. The circuit court set the matter for a hearing on June 6, 2013, and informed the parties that it would conduct the evidentia-ry hearing on the juror-misconduct claim and consider Yeomans’s discovery motion at that hearing.
On May 29, 2013, Yeomans filed a motion requesting that the evidentiary hearing be reset at a date after he had obtained the discovery he sought. The circuit court denied that motion.
At the June 6, 2013, hearing, Yeomans again objected to the evidentiary hearing going forward before he had obtained the discovery he had requested. The circuit court overruled that objection and proceeded with the hearing. Yeomans called the witnesses identified in the above-quoted portion of the circuit court’s order: John Knowles, who had represented Yeo-mans at trial and on direct appeal; Juror L.J.; and Juror L.J.’s half sister, A.G. After the testimony by Yeomans’s witnesses, the circuit court heard argument on the discovery motion and then denied the motion.[1]
*1059 A.
Yeomans argues that “the circuit court erred by holding the evidentiary hearing before deciding the discovery motion.” (Yeomans’s brief on return to remand, p. 26.) Yeomans cites Rule 32.4, Ala. R.Crim'. P., which states, in relevant part, that the circuit - court “in its solé discretion may allow the taking of depositions for discovery or for use at trial.” Yeomans also argues that the circuit court’s failure to rule on the discovery motion until after the-evidentiary hearing was a denial of due process. We disagree.
In Ex parte Mack, 894 So.2d 764, 768 (Ala.Crim.App.2003), overruled, on other grounds by Ex parte Jenkins, 972 So.2d 159 (Ala.2005), this Court stated: ‘“We will reverse a trial court’s denial of a post-conviction discovery request only for an abuse of discretion.... A trial court does not abuse its discretion in denying a discovery request which ranges beyond the limited scope of a post-conviction proceeding and amounts to a “fishing expedition.” ’ ” (Quoting People v. Johnson, 205 Ill.2d 381, 408, 275 Ill.Dec. 820, 836-37, 793 N.E.2d 591, 607-08 (2002).) As noted, Yeomans’s discovery motion sought the following: (1) the opportunity to depose L.J.; (2) the opportunity to depose A.G.; and (3) certain records from the State of Texas, which Yeomans stated would be identified after deposing A.G., regarding the crime against A.G. As to the first two matters requested — the depositions of L.J. and A.G. before the evidentiary hearing— the circuit court, by rule, has the “sole discretion” to grant or deny such a request. See Rule 32.4, Ala. R.Crim. P. Accordingly, the circuit court did not abuse its discretion by waiting to rule on Yeo-mans’s request to depose L.J. and A.G.
Regarding the request for records from the State of Texas and any additional discovery Yeomans thought he would, need, Yeomans, as we discuss below, did not demonstrate, that he was entitled to discovery of any records from Texas or any additional discovery; accordingly, the circuit court did not abuse its discretion in waiting until, the end of the evidentiary hearing to rule on the discovery motion.
B.
Yeomans next asserts that he demonstrated the requisite “good cause” under Ex parte Land, 775 So.2d 847 (Ala. 2000), overruled on other grounds by State v. Martin, 69 So.3d 94 (Ala.2011), and that he was, he says, therefore entitled to the discovery requested in his m.otion. In Ex parte Land, the Alabama Supreme Court stated:
“We emphasize that this holding— that postconviction discovery motions are to be judged by a good-cause standard — does not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4. Accord [State v.] Lewis, [656 So.2d 1248,] at 1250 [ (Fla.1994) ], wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida’s rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner’s showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85(1991).”
*1060 775 So.2d at 853 (emphasis added). As noted above, however, under Rule 32.4, Ala. R.Crim. P., the circuit court has the “sole discretion” to permit the petitioner to depose a witness before an evidentiary hearing. Thus, Yeomans’s arguments regarding “good cause” as to the depositions of L.J. and A.G. are misplaced; we are aware of no authority establishing that a petitioner, upon a showing of “good cause,” is entitled to take a deposition before an evidentiary hearing. Cf. Jackson v. State, 910 So.2d 797, 810 (Ala.Crim.App.2005) (“A petitioner does not have an unlimited and unqualified right to discovery in a postcon-viction proceeding. In Land, the Supreme Court adopted a standard of good cause— it did not elect to adopt the broader standards for discovery that are contained in the Alabama Rules of Civil Procedure.”). Here, Yeomans subpoenaed both L.J. and A.G., and both witnesses testified at the evidentiary hearing.
As to Yeomans’s request for discovery of records from the State of Texas and for possible additional discovery, Yeomans has not demonstrated that he established good cause to obtain those records or any additional discovery. At the evidentiary hearing, Yeomans argued that he was entitled to discovery of the Texas records and that he needed additional time to obtain “independent evidence” by, he said, “interviewing] the police department” that investigated A.G.’s attack. (Record on return to remand, R. 74.) Yeomans further argued that the Texas records or additional time to investigate and interview witnesses in Texas might show that A.G. “shared things with her ex-husband and ... there might be Texas neighbors who have knowledge of this crime.” (Record on return to remand, R. 80.) As the circuit court noted in its order denying the discovery motion, however, “[t]here is no dispute that [A.G.] was the victim of a violent crime [that] occurred in the early eighties in Texas.” Although Yeomans could have continued to conduct an investigation into all the circumstances surrounding the crime and the extent of A.G.’s and LJ.’s relationship, the right to discovery and additional time to investigate claims under Rule 32 is not endless. See, e.g., Land, supra; Jackson, supra. The circuit court did not abuse its discretion in denying Yeomans’s motion for discovery of records from the State of Texas and Yeomans’s request for additional time to conduct an investigation of additional witnesses in the State of Texas.
II.
Yeomans argues that the circuit court erred in not permitting attorney Charles Schafer, who represented Yeomans in his Rule 32 proceedings, to testify at the evi-dentiary hearing. According to Yeomans, Schafer would have testified that in January 2006, Juror L.J. told him that she knew about her sister’s violent attack at the time of Yeomans’s trial in 2001 and that her knowledge of the attack affected L.J.’s service on Yeomans’s jury. Yeo-mans asserts this testimony was necessary to contradict Juror L.J.’s testimony that she did not learn about the crime involving A.G. until after Yeomans’s trial.
The State objected to Schafer’s testimony on multiple grounds and, on appeal, the State continues to argue that the proferred testimony was inadmissible and that any error in the disallowance of the testimony was harmless. We agree.
At the evidentiary hearing, Juror L.J. gave the following testimony, in relevant part:
“Q. Do you remember talking to Mr. Schafer and another lawyer back in 2006 about the Yeomans’ case?
“A. Yes, but they didn’t tell me they were lawyers.
*1061 “Q. Let me go back a second. You were—
“A. They said they were a couple of college kids doing a paper.
“Q. You served as a juror in Mr. Yeomans’ trial in 2001; is that right?
“A. That’s right.
“Q. Can you describe your experience as a juror in that case?
“[ATTORNEY FOR THE STATE]: Objection to the extent that [Yeomans’s attorney] is asking [L.J.] to discuss any of the jury deliberations. That’s protected under Rule 60—
“THE COURT: I sustain for discussing any jury deliberations.
“BY [YEOMANS’S ATTORNEY]:
“Q. Let me make it clear, [L.J.] I’m not asking you about the deliberations. I’m asking you about whether — how you found the experience serving as a juror on Mr. Yeomans’ trial—
“[ATTORNEY FOR THE STATE]: Objection. Relevance.
“THE COURT: I sustain.
“[YEOMANS’S ATTORNEY]: Your Honor, I believe it is relevant, because as we will offer in our offer of proof, Mr. Schafer will be prepared to testify that [L.J.] told him it was very difficult for her to serve on that jury.
“THE COURT: I still sustain.
“BY [YEOMANS’S ATTORNEY]:
“Q. Have you served as a juror since that time?
“A. No, I haven’t.
“Q. Now, when Mr. Schafer and his colleague spoke to you in 2006, did you invite them into your home?
“A. Yes.
“Q. And you had a long conversation with them; is that right?
“A. Yes. Longer than I would have liked.
“Q. Do you recall telling them at that time about your experience sitting on Mr. Yeomans’ jury?
“A. Well, we talked a little bit about it.
“Q. Do you remember telling them that you found it difficult?
“[ATTORNEY FOR THE STATE]: Objection. The same objection.
“THE COURT: I sustain.
“[YEOMANS’S ATTORNEY]: Did you find it difficult to be a member of Mr. Yeomans’ jury?
“[ATTORNEY FOR THE STATE]: Objection.
“THE COURT: I sustain.
“[YEOMANS’S ATTORNEY]: Do you remember telling Mr. Schafer about your sister?
“A. I don’t remember telling him, but he says I did. But—
“Q. Is it possible you forgot telling him?
“A. I didn’t find out about it until after the trial. '
“Q. My question now is, is it possible you forgot telling Mr. Schafer about it?
“A. (No response.)
“Q. Is it possible you just forgot about it now?
“A. Yeah, it’s possible I forgot about it now, but I know when my sister told me.
“Q. How do you know that?
“A. Because she didn’t have access to tell me until this certain period that I know about.
“Q. What do you mean, she didn’t have access to tell you?
“A. Because we weren’t seeing each other. We — I was living with my husband in Geneva where I live now, and she was living in Black — or actually still *1062 living in Montgomery, I’m not sure if she had moved to Black- or not at that point. But then me and my husband were having problems, and I moved to Black.
“Well, I had spent a few nights at first before I had a chance to actually move. And we sat up one night talking, and that’s when she told me about it.
[[Image here]]
“Q. Let’s talk about — you mentioned that you don’t recall telling Mr. Schafer about — anything about your sister; is that right?
“A. I don’t know. I might have told him. I really — it’s been so long, I really don’t know.
“Q. Are you generally in the habit of telling people personal information about your sister?
“A. No, I’m not.
“Q. How many—
“A. That’s why I had my doubts that I told him, but he found out somehow. So if he knows, then evidently I must have told him.
“Q. How many other people have you told that?
“A. I have not told anyone else.
“Q. Let’s talk about — let’s talk about the elephant in the room here. And I apologize for having to ask these questions, but you understand the center of what we’re talking about. Did your sister tell you that she was the victim of a violent crime?
“A. Yes.
“Q. And can you tell me the nature of that crime?
“A. I’m not even sure I remember what she said.
“Q. Do you remember—
“A. Something about somebody kidnapped her or something. I’m not sure.
Like I said, I take what she says with a grain of salt.
“Q. Why do you say that?
“A. Because I’ve just never been able to believe what she says.
[[Image here]]
“Q. [L.J.], do you remember your sister telling you that she was almost raped?
“A. Yes.
“Q. Do you remember her telling you that it was violent?
“A. Yes.
“Q. Do you remember her telling you that she almost died?
“A. No.
“Q. What else did she tell you about that crime?
“A. That she was lucky she got away.
“Q. Did she report it to the police?
“A. Not that I’m aware of.
“Q. Do you know if any suspect was ever caught?
“A. (Shakes head negatively.)
“Q. I’m sorry. Can you answer?
“A. No. I’m sorry.
“Q. That’s okay. Do you know if your sister may have discussed that with anyone else in your family?
“A. Possibly.
“Q. Do you know if she may have discussed it with her friends?
“[ATTORNEY FOR THE STATE]: Objection. Relevance.
“THE COURT: I sustain.
[[Image here]]
“Q. Now, after you met with Mr. Schafer in 2006, did you talk to anyone else about your meeting with Mr. Schafer?
“A. No.
“Q. Did you tell your sister about it?
*1063 “A. No. I didn’t think nothing about it.”
(Record on return to remand, R. 30-40.)
As noted above, Yeomans contends that Schafer would have testified that in January 2006, Juror L.J. told him that she knew about her sister’s violent attack at the time of Yeomans’s trial in 2001 and that her knowledge of the attack affected L.J.’s service on Yeomans’s jury. Juror L.J., however, was not specifically asked if she told Schafer that she learned about the crime involving A.G. before Yeomans’s trial.
Rule 613(b), Ala. R. Evid., states, in relevant part:
“Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness has been confronted with the circumstances of the statement with sufficient particularity to enable the witness to identify the statement and is afforded an opportunity to admit or to deny having made it.”
Here, Juror L.J. did not deny that she had talked to Schafer or that it was possible that she had told Schafer about A.G. and A.G.’s -victimization. Yeomans did not specifically ask L.J., however, whether she told Schafer when she learned about A.G.’s victimization or whether she told Schafer that, at the time of Yeomans’s trial, she knew about the crime involving A.G. Thus, as to whether L.J. allegedly told Schafer when she learned about the attack on A.G. or whether L.J. told him she knew about it at the time of Yéomans’s trial, Yeomans did not lay a proper foundation for Schafer to testify under Rule 613(b), Ala. R. Evid.
Additionally, as to Yeomans’s attempts to question Juror L.J. about her “experience” on- Yeomans’s jury and whether she found it “difficult,” Rule 606(b), Ala; R. Evid., states: ..
“Upon an inquiry into the validity of a verdict or -indictment, a juror may not testify in impeachment.of the verdict or indictment, as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial ■ information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror’s .affidavit or evidence of any statement by the juror concerning a matter about,which the juror would be precluded from testifying be received for these purposes. Nothing herein precludes a juror from testifying in support of a verdict or indictment.”
Yeomans has not demonstrated that his attempt to have Schafer testify that Juror L.J. found it “difficult” to serve on Yeo-mans’s jury was not, in fact, an attempt to inquire into L.J.’s “mental processes in connection with” her deliberation of the verdict in Yeomans’s case. Accordingly, Yeomans has not demonstrated that the circuit court abused its discretion in-sustaining the State’s objections to that line of questioning.
Given that the -circuit court did not abuse its discretion in disallowing Schafer’s proffered impeachment evidence, we need not address; the State’s additional argument that Yeomans failed to demonstrate that Schafer — -who had not withdrawn from representing Yeomans at the time Yeomans attempted to call -Schafer as a witness — should have been permitted to testify. Moreover,, because Schafer’s testimony. could.have been proffered only as *1064 impeachment evidence — not as substantive evidence that Juror L.J. knew about A.G.’s being the victim of a crime or when L.J. learned about that crime — we agree with the State that any error in the exclusion of Schafer’s testimony was harmless. Yeo-mans is not entitled to relief on his claims relating to Schafer’s proffered testimony.
III.
Finally, Yeomans summarily argues that “[i]n light of the evidence presented, Mr. Yeomans is entitled to relief on his juror-misconduct claim.” (Yeomans’s brief, p. 40.) We disagree.
As the above-quoted portion of the circuit court’s order denying relief indicates, the circuit court found that Juror L.J. was credible, that she did not learn of A.G.’s victimization until January 2006, and that L.J., at the time she answered the question on voir dire in Yeomans’s trial, had no knowledge that A.G. had been subject to a violent crime.
In Albarran v. State, 96 So.3d 131, 198 (Ala.Crim.App.2011), this Court stated:
“[Questions regarding weight and credibility determinations are better left to the circuit courts, ‘“which [have] the opportunity to personally observe the witnesses and assess their credibility.” ’ Smith v. State, — So.3d [-,] at- [ (Ala.2007) ] (quoting Smith v. State, [Ms. CR-97-1258, Sept. 29, 2006] — So.3d -, - (Ala.Crim.App.2006) (Shaw, J., dissenting) (opinion on return to third remand)).
“ ‘This court reviews the circuit court’s findings of fact for an abuse of discretion.’ Byrd [v. State], 78 So.3d [445,] at 450 [ (Ala.Crim.App.2009) ] (citing Snowden v. State, 968 So.2d 1004, 1012 (Ala.Crim.App.2006)). ““ “ ‘A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.’ ” ”” Byrd, 78 So.3d at 450-51 (quoting Hodges v. State, 926 So.2d 1060, 1072 (Ala.Crim.App.2005), quoting in turn State v. Jude, 686 So.2d 528, 530 (Ala.Crim.App.1996), quoting in turn Dowdy v. Gilbert Eng’g Co., 372 So.2d 11, 12 (Ala.1979), quoting in turn Premium Serv. Corp. v. Sperry & Hutchinson, Co., 511 F.2d 225 (9th Cir.1975)).”
Yeomans has not demonstrated that the circuit court abused its discretion in its factual findings or that it made an erroneous conclusion of law. Accordingly, the circuit court properly denied Yeomans the relief he sought.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WELCH, KELLUM, and BURKE, JJ., concur.
WINDOM, P.J., concurs in the result.

. Yeomans neither sought discovery relating to this claim- nor attempted to present evidence in support of it. Accordingly, this argument is without merit.

. Although no rule establishes that Yeomans had the right to file evidence to counter Juror LJ.'s affidavit, caselaw does establish that right. Wilson v. State, 911 So.2d 40, 46 (Ala.Crim.App.2005). In the same vein, no rule in the Rules of Criminal Procedure provides a postconviction petitioner the right to move for discovery; instead, that ability was established by caselaw. See Ex parte Land, 775 So.2d 847 (Ala.2000). Despite the fact that there is no rule allowing postconviction discovery,-Yeomans managed to move for discovery (although not relating to Juror L.J.) without prompting from the circuit court.