2015 IL App (1st) 131550

SECOND DIVISION
September 8, 2015

No. 1-13-1550

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 10345 |
| | ) | |
| ANGEL NAVARRO, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Angel Navarro appeals from an order of the circuit court denying his *pro se* "motion for ballistic testing" under section 116-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3 (West 2012)). On appeal, Navarro contends that the trial court erred in denying his request for ballistics testing because it had the potential to reveal materially relevant evidence of his innocence. We affirm the circuit court's dismissal of defendant's motion for ballistics testing because Integrated Ballistic Identification System (IBIS) testing of the bullet shells would not materially advance Navarro's claim of actual innocence due to the State's strong evidence identifying Navarro as the shooter.

¶ 2                    Background

¶ 3     At Navarro's jury trial, the State represented, through the testimony of occurrence witnesses Artemio Magdaleno, Heber Garcia, and Carlos Colon, and through the testimony of police officer John Meer, that Navarro fired three shots in the direction of the victim, Josue Guerra, who died after being shot twice near the intersection of Leclaire Avenue and Montana Street, Chicago, on the evening of April 6, 2004.

¶ 4     Officer Meer specifically testified that when he reached Leclaire Avenue after hearing gunshots in the area, he saw Navarro, who was wearing a white shirt and white or beige pants, running north on Leclaire Avenue. Meer pursued Navarro on foot, and saw him pull a gun out from the waistband and hold it while running down an alley. When Navarro turned and ran through a gangway, Meer ran through a parallel gangway to Montana Street. Meer saw Navarro emerge onto Montana Street, wearing a black hooded sweatshirt that he had not been wearing when Meer first saw him.  After Meer arrested Navarro, Magdaleno, Garcia, and Colon identified Navarro as the shooter. Police recovered a loaded gun from a yard at 5022 West Montana Avenue. It was determined that three spent shells recovered from the scene were fired from the recovered gun.

¶ 5     The defense called several witnesses to establish that the State's witnesses had mistakenly identified Navarro as the shooter. The jury found Navarro guilty of first degree murder, and the trial court sentenced him to 60 years' imprisonment, including a mandatory sentencing enhancement of 20 years for personally discharging a firearm during the commission of the offense. We affirmed that judgment on direct appeal. *People v. Navarro*, No. 1-05-3692 (2008) (unpublished order under Supreme Court Rule 23).

¶ 6     In 2008, Navarro filed a *pro se* postconviction petition alleging ineffective assistance of trial counsel for not challenging the show-up identification at the scene, and ineffective

assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel. The circuit court summarily dismissed Navarro's postconviction petition, and we affirmed that judgment on appeal. *People v. Navarro*, No. 1-09-0335 (2011) (unpublished order under Supreme Court Rule 23) (*Navarro II)*.

¶ 7    On March 12, 2013, Navarro filed *pro se* a "Motion for Ballistic Testing," alleging that the murder weapon might have been used by one of a "group of young thugs" allegedly seen in the neighborhood before the shooting and that the "callous, bold and cold manner in which the crime was carried out demonstrates an extreme anti-social psyche of one who entertains an inhibition to casual violence whereas [Navarro] has no such violence in his background." Navarro asserts that an IBIS search could discover links to other crimes, and has the potential to produce new, non-cumulative evidence materially relevant to his assertion of innocence.

¶ 8    In a written order entered on April 8, 2013, the circuit court denied Navarro's motion. In doing so, the court held, "[w]hile an IBIS search may have the potential to link the murder weapon in this case to another crime, it *does not have the scientific potential to produce new non-cumulative evidence materially relevant to assertion of actual innocence*." (Emphasis in original.) The court further stated in a footnote that the evidence conclusively established that the weapon recovered had been used to murder the victim, and although it is possible the gun might have been used in other crimes by different people, or even Navarro, the tests Navarro requested cannot exculpate him.

¶ 9                                    Analysis

¶ 10    On appeal, Navarro contends that the circuit court erred in denying his request for ballistics testing. In particular, he maintains that an IBIS search of the ballistics evidence—the the spent shells—could show that the gun the police linked to him was not the murder weapon.

As Navarro concedes, his argument on appeal differs from this argument before the trial court. That argument contended that IBIS testing could link the gun in evidence to  a psychopathic killer more likely to have committed the murder than himself as Navarro had no violence in his background. Nevertheless, we will address Navarro's claim on appeal where it seeks the same relief as that sought at the trial court,  namely, the testing of the ballistics evidence used to convict him. See *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 14 (claim preserved on appeal where trial court had opportunity to address essential claim).

¶ 11    IBIS serves as a nationwide computerized database for firearms, bullets, and cartridge casings. *People v. Pursley*, 407 Ill. App. 3d 526, 533 (2011). It compares ballistic signatures on fired bullets and cartridge casings to each other, and can discover links between crimes that otherwise would remain hidden. *Id.*

¶ 12    Section 116-3(a)(1) of the Code provides a defendant may move for IBIS testing on evidence secured for the trial that resulted in his or her conviction but was not subjected to IBIS testing at trial. 725 ILCS 5/116-3(a)(1) (West 2012). To present a *prima facie* case for IBIS testing, the defendant must show "identity was the issue in the trial [or guilty plea] which resulted in his *** conviction; and *** the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect." 725 ILCS 5/116-3(b) (West 2012). The trial court should permit the requested testing if "the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence [when the defendant's conviction was the result of a trial,] even though the results may not completely exonerate the defendant " and "the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116-3(c) (West 2012).

¶ 13    To be materially relevant to a defendant's claim of actual innocence, the evidence must tend "to 'significantly advance' his [or her] claim of actual innocence." *People v. Johnson*, 205 Ill. 2d 381, 395 (2002) (quoting *People v. Savory*, 197 Ill. 2d 203, 213 (2001)). A materially relevant determination requires an examination of the trial evidence, as well as the evidence the defendant wants to test, but, it need not by itself exonerate the defendant. *Id*. at 395-96. We review *de novo* a trial court's ruling denying a section 116-3 motion. *People v. Shum*, 207 Ill. 2d 47, 65 (2003).

¶ 14    Navarro argues that he has met the requirements of section 116-3. He emphasizes: (i) the identity of the shooter was at issue during trial,  (ii) the State maintained a chain of custody over the ballistics evidence, (iii) IBIS testing is generally accepted in the scientific community, and (iv) IBIS testing did not occur during trial. Navarro contends evidence found as a result of IBIS testing would be materially relevant because it could link the recovered shells to a different gun, and thus show he was not the shooter.

¶ 15    The State concedes that identity was an issue at trial, the State maintained a chain of custody over the ballistics evidence, and that generally the ballistics testing sought by Navarro is accepted by the scientific community. But, contrary to what Navarro argues, the State maintains Navarro cannot establish that an IBIS search has the scientific potential to produce new, noncumulative evidence materially relevant to actual innocence as required by section 116-3(c).

¶ 16    We agree with the State. Through IBIS testing of the shells recovered at the scene, Navarro hopes to find evidence that could link these shells to a different gun, and thus show the gun found on his supposed escape route was not the murder weapon. But Navarro fails to take into account that four witnesses identified  Navarro as the shooter: (i) Magdaleno testified that he saw Navarro fire gunshots in his direction as well as the direction of  the victim and his friends;

(ii) Garcia and Colon testified they heard gunshots and then saw Navarro standing on Leclaire Avenue with a gun in his hand; and (iii) Officer Meer testified that he chased and apprehended Navarro within minutes of the shooting, observing him pull a gun from his waistband during the chase. This overwhelming eyewitness testimony identifying Navarro as the shooter did not hinge on the ballistics testimony presented by the State, which corroborated the eyewitness testimony by linking the shells at the scene to the recovered gun, and thus the results of any IBIS testing would be immaterial. See *Savory*, 197 Ill. 2d at 214-15 (finding DNA testing of bloodstained trousers worn by defendant at time of murders was not materially relevant to his claim of actual innocence where bloodstain was only minor part of State's evidence). Thus, IBIS testing of the bullet shells would not materially advance Navarro's claim of actual innocence.

¶ 17    We deem Navarro's remaining arguments unconvincing. Navarro repeatedly characterizes as suggestive the eyewitness identifications of him at the scene. But, this court previously disagreed with Navarro, and in response to his first postconviction petition stated:

> "The fact that defendant was handcuffed during the show-up was irrelevant because a suspect in handcuffs does not automatically weaken the veracity of an identification. [Citation.] Spotlighting defendant was non-suggestive and, instead, necessary considering it was dark outside when the show-up was conducted. [Citation.] Moreover, returning defendant to the scene of the shooting was not 'suggestive' where the witnesses unequivocally identified defendant as the shooter. Furthermore, while separate viewing would have been the better practice, the fact that the witnesses were not sequestered, by itself, was not enough to find that this particular show-up was unnecessarily suggestive." *Navarro II*, order at 7.

¶ 18 We also find *Pursley*, 407 Ill. App. 3d 526, relied on by Navarro, highly distinguishable. In *Pursley*, the defendant, who was found guilty of first degree murder, filed a motion for ballistics testing, which the trial court denied. *Id*. at 528. On appeal, he argued that "IBIS testing could reveal that ballistics evidence from the crime scene might match a weapon that was used in a crime *after* defendant was incarcerated, which could be exonerating evidence as the State heavily relied upon the ballistics evidence produced at trial." (Emphasis in original.) *Id*. at 529. The Second District reversed the trial court and concluded that the defendant met the requirements of section 116-3, particularly because IBIS testing could show that crime scene evidence matched the evidence of another crime that occurred after police confiscated the defendant's gun, thus implicating another possible weapon besides the defendant's gun. *Id*. at 535. In doing so, the Second District noted that the State and defense both relied on the ballistics evidence, and much of the State's remaining evidence was circumstantial. *Id*. at 538-39. Here, however, ballistics evidence was not the lynchpin of the State's case. Instead, as stated by this court in affirming the dismissal of defendant's first postconviction petition, "the evidence against defendant was overwhelming," as "[t]hree witnesses unequivocally testified that defendant shot the victim" and "[t]he murder weapon was later found in the bushes in front of the house where defendant was arrested." *Navarro II,* order at 7.

¶ 19 We affirm the judgment of the circuit court dismissing Navarro's motion for ballistics testing.

¶ 20 Affirmed.