NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 180675-U

NO. 4-18-0675

IN THE APPELLATE COURT

FILED
January 6, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| DONTRELL L. THOMPSON, | ) | No. 11CF672 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court granted OSAD's motion to withdraw and affirmed the trial
court's denial of defendant's motion for DNA testing.

¶ 2        Defendant, Dontrell L. Thompson, appeals from the trial court's denial of his

motion for deoxyribonucleic acid (DNA) testing. Defendant's appointed appellate counsel, the

Office of the State Appellate Defender (OSAD), has filed a motion to withdraw on the basis no

meritorious argument can be raised on appeal. For the reasons discussed below, we grant

OSAD's motion and affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4    In 2011, the State charged defendant with attempt (first degree murder) (720 ILCS 5/8-4, 9-1(a) (West 2010)) and aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), alleging "that he shot [the victim] with a handgun." Defendant's case proceeded to a jury trial.

¶ 5                                   A. Jury Trial

¶ 6    This court previously discussed the evidence presented at defendant's trial in *People v. Thompson*, 2018 IL App (4th) 150597-U. Thus, here, we discuss only the evidence relevant to the issue now before us.

¶ 7    Tyeeste Slaughter testified that while she was driving on the interstate in Champaign, she noticed a vehicle driving erratically so she called the police. The dispatcher asked her to get the vehicle's license plate number, so she followed the vehicle to the Market Place Mall (the mall). Slaughter further testified that she observed three men get out of the vehicle, one of whom possessed a firearm. Slaughter did not identify defendant as the individual with the firearm.

¶ 8    Roman Gordon testified he worked as a security guard at the mall. Gordon was alerted "there was an armed subject somewhere in the parking lot ***." As he exited the mall for the parking lot to investigate, Gordon observed an individual running "12 or 13 yards out into the parking lot area" where he "dropped from being shot." Gordon identified defendant as the shooter.

¶ 9    Champaign police officer Shane Standifer testified that he "was dispatched for *** an armed subject that was seen getting out of a [vehicle] in the parking lot." As Standifer was in the parking lot looking for the suspect, he heard gunshots and ran towards the sound. Standifer testified that he observed defendant "standing over [the victim] with a handgun ***."

¶ 10 Champaign police officer John McAllister testified that he observed defendant standing over the victim with a firearm in his hand. McAllister further testified he believed defendant was going to shoot the victim again, so he shot defendant, which caused defendant to drop the firearm.

¶ 11 Champaign police officer David Shaffer testified he observed defendant "standing *** directly behind and next to [the victim] and he was holding a pistol in his hand pointed downward toward [the victim]." Shaffer further testified the firearm defendant dropped was the only firearm located at the scene of the shooting.

¶ 12 Champaign police officer Thomas Petrilli testified he witnessed defendant "actually pointing and firing a firearm at [the victim]."

¶ 13 Defendant did not present any evidence.

¶ 14 Following presentation of the evidence, the jury found defendant guilty of both counts. The trial court sentenced defendant to 55 years' imprisonment, and this court affirmed his sentence on direct appeal. See *People v. Thompson*, 2013 IL App (4th) 120508-U.

¶ 15                                   B. Motion for DNA Testing

¶ 16 In July 2017, defendant *pro se* filed a motion for DNA testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2016)). Defendant requested the court order forensic testing of the firearm, magazine, and cartridges recovered from the scene of the crime, alleging the testing could "potentially provide some biology evidence[,] hair, skin, or sweat, that [could] help [him] prove [his] actual innocence." The State filed an answer to defendant's motion, arguing he failed to establish identity was the central issue at his trial and, alternatively, the testing requested would not produce new, noncumulative evidence materially relevant to his actual innocence claim. The trial court denied defendant's motion,

finding he "failed to establish \*\*\* a *prima facie* case that identity was the issue in the trial or that the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to [his] assertion of actual innocence."

¶ 17 Defendant filed a timely notice of appeal, and OSAD was appointed as appellate counsel. OSAD subsequently filed the instant motion to withdraw, contending no meritorious argument can be raised on appeal. This court gave defendant 30 days to respond to OSAD's motion; defendant did not file a response.

¶ 18                                    II. ANALYSIS

¶ 19 OSAD contends no meritorious argument can be made that the trial court erred in denying defendant's motion for DNA testing. We review the denial of a motion for DNA testing *de novo*. *People v. Shum*, 207 Ill. 2d 47, 65, 797 N.E.2d 609, 620 (2003).

¶ 20 "Section 116-3 allows a defendant to have physical evidence subjected to scientific testing that was not available at the time of trial if certain requirements are met." *People v. Savory*, 197 Ill. 2d 203, 208, 756 N.E.2d 804, 808 (2001). "[T]o present a *prima facie* case for forensic testing, the defendant must show that identity was the central issue at trial and that the evidence to be tested was subject to a sufficiently secure chain of custody." *People v. Johnson*, 205 Ill. 2d 381, 393, 793 N.E.2d 591, 599 (2002).

¶ 21 If the defendant establishes a *prima facie* case for testing, "[t]he trial court then must determine whether this testing will potentially produce new, noncumulative evidence that is materially relevant to the defendant's actual-innocence claim." *Johnson*, 205 Ill. 2d at 393. "Materially relevant" evidence for purposes of section 116-3 "is simply evidence which tends to significantly advance [an actual innocence] claim." *Savory*, 197 Ill. 2d at 213. Whether the

evidence is materially relevant "requires a consideration of the evidence introduced at trial, as well as an assessment of the evidence defendant is seeking to test." *Id.* at 214.

¶ 22　　　　Here, even if we were to assume defendant established a *prima facie* case for DNA testing, given the overwhelming evidence of his guilt, no colorable argument can be made the testing would have produced evidence to significantly advance his actual innocence claim. The State presented the following evidence at defendant's trial: (1) Roman Gordon, a mall security guard, testified that he witnessed defendant shoot the victim; (2) four police officers— Officers McAllister, Standifer, Petrilli, and Shaffer—testified that they witnessed defendant with a firearm in his hand standing over the victim seconds after shots were fired; (3) Officer Petrilli testified he witnessed defendant "firing a firearm at *** [the victim]"; and (4) Officer McAllister testified that he shot defendant because he feared defendant would shoot the victim again. Thus, five separate witnesses testified to either observing defendant shoot the victim or standing over the victim with a firearm seconds after shots were fired, and defendant presented no evidence to refute this testimony. Under these circumstances, we cannot say that a test result favorable to defendant would significantly advance his claim of actual innocence.

¶ 23　　　　Accordingly, we agree no argument can be made the trial court erred in denying defendant's motion for DNA testing.

¶ 24　　　　　　　　　　　　　III. CONCLUSION

¶ 25　　　　For the reasons stated, we grant OSAD's motion and affirm the trial court's judgment.

¶ 26　　　　Affirmed.