2021 IL App (1st) 152600-U

No. 1-15-2600

Order filed March 18, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County, Illinois |
| Respondent-Appellee, | ) ) | |
| vs. | ) ) | No. 06 CR 22884 |
| DONZELL THOMAS, | ) ) | Honorable Joseph G. Kazmierski, |
| Petitioner-Appellant. | ) | Judge presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court improperly denied petitioner access to his trial counsel's file at the second stage of postconviction proceedings.

¶ 2     Donzell Thomas appeals the second-stage dismissal of his petition filed under the Postconviction Hearing Act. For the reasons set forth in this order, we vacate the dismissal and remand for new second-stage proceedings.[1]

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3                                              BACKGROUND

¶ 4        Following a jury trial, Donzell Thomas was found guilty of the armed robbery of Trinette Jackson, Shondale Harris, and Yvette Felton. At approximately 12:45 a.m. on September 3, 2006, the three women were sitting in a van outside a nightclub preparing to go in. They noticed a man that they each later identified as Thomas talking to a woman in the parking lot. Thomas then walked toward the van by himself and asked for a light. As Jackson began to hand him her lighter, Thomas entered the van jumping into the back seat. He then put a gun to Jackson's side and demanded that the women give him their money, cell phones, and jewelry. Each complied and Thomas fled. The victims drove away eventually finding a police station. An officer took their report and a description of the offender.

¶ 5        A week later, Detective Ray Verta had Harris and Jackson view a photo array that included Thomas. Both identified Thomas as the man who robbed them and he was arrested a short time later. After being placed in a physical lineup, Thomas was again identified by all three women. Jackson and Harris attended Thomas's preliminary hearing and there observed the same woman in the courtroom that they saw speaking with Thomas just before the robbery. The woman left the courtroom at the conclusion of Thomas's hearing.

¶ 6        In a pretrial court appearance, Defense counsel Assistant Public Defender Mark Douglass indicated his intent to present an alibi defense. He later filed an answer including an alibi defense naming two individuals as potential witnesses. Counsel also advised the court he was discussing the possibility of a stipulation with the State regarding certain testimony from a third witness, a police officer. On a subsequent court date, counsel stated his intent to subpoena the police officer and some of the officer's phone records. Ultimately, however, counsel filed an amended answer omitting alibi and the witnesses previously listed.

¶ 7        At trial, Defense counsel focused on the photo array and lineup procedures when cross-examining the State's witnesses. Counsel also called as a witness Officer Oates, the desk officer who took the victims' initial report.[2] Officer Oates testified that the victims described the offender as having a distinctive birthmark on his face and the officer recorded that detail in his report. At trial, none of the victims testified that the offender had a birthmark on his face; rather, they variously described his face as having pot marks, holes, or "little bumps that the guys get." Nothing in the record suggests Thomas, in fact, has a birthmark or other distinctive facial feature. Nevertheless, all three victims identified Thomas in court as the person who robbed them. In closing, Defense counsel argued the victims' misidentified Thomas as the robber.

¶ 8        The jury returned a verdict finding Thomas guilty of three counts of armed robbery. Thomas was sentenced to mandatory natural life under the habitual criminal statute (720 ILCS 5/33B-1 (West 2004)) based on two prior armed robbery convictions; one in Illinois from 1984 and another in Wisconsin from 1990.

¶ 9        On direct appeal, Thomas argued the State did not prove he used a dangerous weapon; the venire was not properly admonished under Supreme Court Rule 431(b); the judge's hostile remarks toward defense counsel required a new trial; the jury should have been instructed on the lesser include offense of robbery; and the trial court should have inquired further into his posttrial allegations of ineffective assistance of counsel. We rejected those arguments and affirmed. *People v. Thomas*, 2011 IL App (1st) 082955-U.

¶ 10        In 2013, Thomas filed a *pro se* postconviction petition alleging ten claims. Among them, he claimed the State knowingly introduced perjured testimony in his trial; the trial court should have inquired into his allegation of ineffective assistance in his *pro se* posttrial motion; and his

---

[2] The record does not contain Officer Oates's first name.

trial counsel was ineffective for failing to adequately investigate his alibi. Specifically, he alleged his counsel should have obtained the police officer's phone records that he alluded to before trial.

¶ 11     The Clerk received Thomas's *pro se* petition in November 2012. Subsequently, the trial court docketed the petition and appointed counsel. In February 2014, while still represented, Thomas filed a *pro se* "Motion for Discovery in Reference to Post-conviction Petition." In the motion, Thomas sought "preliminary hearing transcripts, police reports (minus victims personal information), live line-up photos, letters written to both trial attorneys and a supplemental report written by Detective Verta." The motion stated he previously requested these items from both his trial and postconviction counsel. Thomas also asserted that he "wrote to the Chicago Police Dept. under the Freedom of Information Act (2) times over 18 months ago with no reply."

¶ 12     Thomas went on to say that he wrote to the Illinois Attorney General for help. He attached a copy of a letter dated September 19, 2012 from the Office of the Illinois Attorney General addressed to the Cook County Public Defender's Office. The letter indicates Thomas contacted the Attorney General asserting he had submitted a Freedom of Information Act (FOIA) request to the Public Defender in August 2012 for the same items listed in his motion and that he had not received a response. The letter then asked the Public Defender to explain how it was handling Thomas's FOIA request or to provide a copy if the Public Defender had already responded.

¶ 13     In his motion, Thomas claimed that all these efforts were "to no avail." He therefore asked the trial court to order the State's Attorney and appointed counsel to provide him with the requested items. He claimed those items would substantiate his postconviction claims and that he could not establish them without it. On the next court date, postconviction counsel appeared status on Thomas's postconviction petition. Thomas was not present. The trial court informed counsel it was

in receipt of Thomas's *pro se* filed motion for discovery. Counsel informed the court he needed to respond to a letter from Thomas and would do so before the next status date.

¶ 14    Months later, Thomas indicated he wanted to represent himself. The court ultimately allowed him to do so during an appearance on September 8, 2014. That same date, Thomas requested standby counsel to assist with "getting certain files, certain paperwork," but said he could argue his own case. The court told Thomas it would not appoint standby counsel. Thomas then raised his motion for discovery. This discussion followed:

> "THE COURT: Well, since you're pro se you should know that the ordinary discovery rules don't ordinarily apply to post-conviction matters. You're not going to start off basically from the very beginning and like go through a whole trial and all those types of things. We'll have to take a look at - - the State's going to file a response to your petition and then we'll go from there, and whether or not it goes to second stage as far as whether or not I set it down for a hearing, I mean, it's been documented already so the State is going to file a motion to dismiss probably.
>
> * * *
>
> Since you don't have an attorney to represent you if there's going to be any further amendments they'll have to come from you.
>
> THE DEFENDANT: But the only way I can amend it is if I get the discovery. The material I need to substantiate the claims I'm raising are part of the discovery that I'm asking for.
>
> THE COURT: Well, if your claims are raised they are part of the record right now. Substantiating them may come to a hearing if it goes that far, but you may be    one    step ahead of yourself. If I deny the Sate's motion to dismiss then I may grant you some discovery requests at that point in time * * *."

¶ 15    The State filed its motion to dismiss in December 2014. Thomas filed a response in January 2015. The court heard argument in May 2015. At that hearing on the State's motion to dismiss Thomas's postconviction petition, Thomas and the trial judge had the following exchange:

"THE DEFENDANT: * * * I actually had an alibi, in police custody at the time. My lawyer knew this.

* * *

[Detective Rock] didn't want to get involved at that time. Two of his co-workers had a case pending against me, this armed robbery.

When we came back to court, [Douglass] made you aware that alibi defense failed. To this day I don't know why it fell through, why he didn't subpoena this individual. My fiancée was a witness. He told her not to come to court.

* * *

As I said, I was in police custody.

THE COURT: You were in police custody?

THE DEFENDANT: That's what this detective would have testified to.

THE COURT: You were charged with an offense then?

* * *

THE DEFENDANT: No, I was not charged. I used this detective's cell phone to call my fiancée to pick me up from 51st and Wentworth.[3] This is documented."

¶ 16    The court took the matter under advisement. In June 2015, Thomas filed a motion titled "Motion to Compel Attorney to Produce Client's File." In that motion, Thomas asked the court to order his postconviction counsel to produce "all papers and documents received" while appointed to represent him. On the next court date, Thomas, explained he filed the motion to compel because he was trying to get his files. The court responded:

"We'll take one step at a time. I'm still reviewing your record and, as you see, it's kind of voluminous. You keep - - You know, you're filing all these things and I want to make sure I'm catching everything too so it's complete. I'm going to continue your case for two more weeks and I'll be able to rule on the State's motion to dismiss at that time."

¶ 17    Two weeks later, the court granted the State's motion to dismiss in an oral ruling. Thomas had a written motion to reconsider prepared and filed it while still before the court. Orally, Thomas

---

[3] Numerous opinions of this court refer to 51st and Wentworth as the location of a police station. See, *e.g.*, *People v. Lee*, 335 Ill. App. 3d 659, 662 (2002).

argued the court's denial of discovery prevented him from amending his petition to include supporting evidence. The trial court denied the motion to reconsider. Thomas now appeals.

¶ 18    In this appeal, Thomas argues: (1) the State used perjured testimony from Detective Verta to obtain Thomas's conviction; (2) we should remand for proceedings under *People v. Krankel*, 102 Ill. 2d 181 (1984), because even his conclusory allegation triggered the trial court's duty to inquire; (3) trial counsel failed to render effective assistance when he abandoned the alibi defense without an adequate investigation; and (4) the trial court erred by not allowing discovery at the second stage of postconviction proceedings.

¶ 19                                    ANALYSIS

¶ 20    The Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*.) (West 2012) enables a defendant to challenge their conviction based on alleged constitutional violations that occurred during their trial. *People v. Dupree*, 2018 IL 122307, ¶ 28. The Act provides for three stages of review. *People v. Domagala*, 2013 IL 113688, ¶ 32. Most petitions are drafted *pro se* without the assistance of counsel. *People v. Tate*, 2012 IL 112214, ¶ 9. At the first stage, a petitioner need only assert enough facts to make out an arguable constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). If the circuit court finds the petition meets that threshold, the petition advances to the second stage where the petitioner may be afforded appointed counsel. *Tate*, ¶ 10. The State enters the litigation at this stage and may file an answer or motion to dismiss the petition. 725 ILCS 5/122-5 (West 2012).

¶ 21    If the State files a motion to dismiss, the circuit court reviews only the legal sufficiency of the petition. *Domagala*, 2013 IL 113688, ¶ 35. The court does not engage in any fact-finding or credibility determinations. *Id*. Rather, the court takes all well-pled factual allegations as true unless positively rebutted by the original trial record. *Id*. A petitioner is only entitled to advance to the

third stage—an evidentiary hearing—when the allegations supported by "affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2012)) make a substantial showing of a constitutional deprivation. *Dupree*, ¶ 28. A substantial showing means the allegations, if proven at an evidentiary hearing, would entitle the petitioner to relief. *Domagala*, ¶ 35. We review the dismissal of a postconviction petition at the second stage *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31. *De novo* means we analyze the petition's claims the same as a trial court would. *People v. Parada*, 2020 IL App (1st) 161987, ¶ 18.

¶ 22    The Act does not provide for discovery and the civil or criminal discovery rules do not apply to postconviction proceedings. *People v. Fair*, 193 Ill. 2d 256, 264 (2000). Rather, a circuit court has discretion to permit discovery through its inherent authority, but only for "good cause shown." *People ex rel. Daley v. Fitzgerald*, 123 Ill. 2d 175, 183 (1988). Good cause is shown by "considering the issues presented in the petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources." *People v. Johnson*, 205 Ill. 2d 381, 408 (2002). We review the circuit court's denial of a postconviction discovery request for an abuse of discretion. *People v. Lucas*, 203 Ill. 2d 410, 429 (2002). No abuse of discretion occurs where the request "ranges beyond the limited scope of a post-conviction proceeding and amounts to a fishing expedition" (internal quotation marks omitted). *Johnson*, 205 Ill. 2d at 408.

¶ 23    On appeal, Thomas explains that his discovery request encompassed two distinct classes of material: items already in the Public Defender's file for his case, which he refers to as trial discovery or counsel's trial file; and items not previously produced, which he refers to as new or postconviction discovery. Thomas derives this distinction from *People v. Dixon*, 2019 IL App (1st)

160443. In *Dixon*, a divided panel of this court held that the circuit court should grant a *pro se* postconviction petitioner access to their trial counsel's file with appropriate redactions. *Id*. ¶ 54.

¶ 24    Just as in this case, Dixon was represented by the Public Defender at trial and discharged his appointed postconviction counsel. After he elected to proceed *pro se*, he specifically asked the trial court for access to his trial counsel's file and items counsel would have received in pretrial discovery so he could amend his petition. *Id*. ¶¶ 18, 20. The court allowed discovery of police reports and witness's written statements. *Id*. ¶ 22. But the court denied Dixon his trial counsel's file finding its contents were work product and his request was "fishing" for bases to assert new claims instead of support for his existing claims. *Id*. ¶¶ 22, 32.

¶ 25    On appeal, the majority observed it was odd to characterize the trial file as discovery because discovery is traditionally understood as a search for new information and the information in the trial file would have already been tendered. *Id*. ¶ 31. Nevertheless, the court found the trial court's reasons to deny Dixon access to it were insufficient. *Id*. The majority noted our supreme court rejected the requirement that a petitioner show a nexus between his discovery request and his asserted claim. *Id*. ¶ 32, citing *Fair*, 193 Ill. 2d at 266. They also reasoned the work-product doctrine did not bar access (*id*. ¶ 41) and a lawyer has a duty to return their client's file upon termination. *Id*. ¶ 43, citing Ill. R. Prof'l Conduct (2010), R. 1.16(d) (eff. Jan. 1, 2010). Thus, the majority held the trial court should have adopted an open-file policy for access to trial counsel's file. *Id*. ¶ 54. The court then remanded for new second-stage proceedings with access to trial counsel's file. *Id*. ¶ 55.

¶ 26    In this case, Thomas relies on *Dixon* to argue that we should remand for new second-stage proceedings where he can have access to his trial counsel's file.[4] Although he asserts his discovery

_____

[4] *Dixon* was decided after Thomas filed his initial brief, but before his reply.

request before the trial court encompassed both counsel's trial file and new discovery, he only argues regarding the trial file on appeal. Consequently, we will limit our consideration to the same.

¶ 27    This case differs from *Dixon* in that Thomas did not expressly request access to his trial counsel's file. However, in his written motion for discovery filed *pro se* while he was still represented by appointed postconviction counsel, he requested preliminary hearing transcripts, police reports, lineup photos, and letters written to his trial attorneys. Those are the type of documents that would likely be found in trial counsel's file. In addition, Thomas's motion explained he had attempted to obtain these items from the Public Defender's Office and even contacted the Attorney General's Office about his unfulfilled FOIA request. Taken together, it was manifest that Thomas was seeking materials pertaining to his case in the Public Defender's possession.

¶ 28    Although the trial court is not obligated to consider a *pro se* motion for discovery while a petitioner is represented (*People v. James*, 362 Ill. App. 3d 1202, 1205 (2006)), Thomas orally alerted the court to his "pending" motion for discovery, asking for the motion to be "hear[d] so [he could] amend [his] petition." He told the court that he needed "the discovery that [he was] asking for" in order to amend his petition and substantiate his claims. Thomas did not specifically identify the materials he was seeking when he made his oral request for discovery, but his oral request explicitly referred to his earlier written motion. The trial judge acknowledged receiving the written motion to Thomas's postconviction counsel in a prior status court appearance in which Thomas was not present.

¶ 29    Under these circumstances, Thomas's oral request was sufficient to prompt the trial judge to either review Thomas's written request or further inquire of him what he was seeking. That would have reasonably led the court to ascertain that Thomas was seeking his trial counsel's file.

But instead, the court reflexively put the matter aside on the condition that it would consider Thomas's request for discovery, if at all, after it had ruled on the State's forthcoming motion to dismiss his postconviction petition. That was not a correct legal proposition. Nothing limits postconviction discovery to third-stage proceedings or conditions it upon surviving the State's motion to dismiss.

¶ 30     When viewed together and construed liberally, we find that Thomas's written and oral requests for discovery sufficiently presented the trial court with a request for access to his trial counsel's file, access to which Thomas is entitled under *Dixon*. Therefore, we vacate the trial court's order dismissing Thomas's postconviction petition and remand for new second stage proceedings.

¶ 30     On remand, if Thomas again elects to represent himself, he shall be given access to his trial counsel's file with appropriate redactions. See *Dixon*, 2019 IL App (1st) 160443, ¶ 54. In addition, "the trial judge has discretion to withhold any material that poses a substantial risk of causing physical harm, intimidation, annoyance, or embarrassment to any person or for any other factor determined to outweigh the usefulness of disclosure." *People v. Elkins*, 2019 IL App (1st) 161798, ¶ 34. Particular materials are also subject to the Public Defender's assertions of confidentiality or privilege. *Id*. ¶ 38.

¶ 31     Because Thomas may amend his petition on remand, which could include withdrawal or modification of his other claims, and the petition might proceed to an evidentiary hearing, we do not consider his other claims on appeal at this time.

¶ 32                              CONCLUSION

¶ 33     For the foregoing reasons, we find the trial court improperly denied Thomas access to his trial counsel's file to which he was entitled. We vacate the order dismissing Thomas's

postconviction petition and remand to the circuit court for new second stage proceedings in accordance with the Act and consistent with this order.

¶ 34   Order vacated and cause remanded.